UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CASE NO.: 5:04cv-94-R

CHRISTOPHER MICHAEL WILLIAMS                                              PLAINTIFF

v.

MATT SMITH, LIVY LEAVELL, JR. and                                          DEFENDANTS
CHRISTIAN COUNTY, KENTUCKY

**MEMORANDUM OPINION**

This matter comes before the Court on the Defendants' Motion for Summary Judgment (Docket #15). The Plaintiff has responded (Docket #24), and the Defendants have replied to his response (Docket #30). This matter is now ripe for adjudication. For the following reasons, the Defendants' Motion for Summary Judgment is **GRANTED**.

**BACKGROUND**

On May 7, 2003, Plaintiff Chris Williams ("Williams") became aware of an outstanding warrant for his arrest due to an altercation with his fiancé that resulted in a charge against him for second degree assault. Williams turned himself into the Hopkinsville Police Department, where he was placed under arrest and taken to the Christian County Jail in Hopkinsville. Upon admission into the jail, Williams provided a jail inmate medical history concerning his asthma condition, which included: the listing of his medications; breathing treatments he would need (that he did not have access to because of a restraining order issued by a state court prohibiting him from going to the home of his fiancé where the medication was located); and his physician. At the time he was admitted into the jail, Williams had his inhaler with him.

After being informed that he would not be released from jail that afternoon, Williams informed a senior deputy jailer, Major Bradley L. Boyd ("Major Boyd"), that he would need his breathing machine (nebulizer) for self-administered breathing treatments. Major Boyd permitted Williams to phone his Aunt, Kelly Simpson, so that he could inform her to bring him his breathing machine and medicine. Major Boyd put Williams into an isolation cell for medical reasons sometime between 2:00pm and 3:00pm on the afternoon of May 7, 2003. At 3:35pm, Kelly Simpson brought the nebulizer machine and medicine to the jail.

At some point, while in his isolation cell, Williams began to have problems breathing. He used his inhaler two (2) times during this episode, which helped for a short time, but did not completely alleviate the problem. Deputy Matt Smith ("Deputy Smith"), was in charge of checking up on the Plaintiff while the Plaintiff was in his cell. Sometime after the start of his shift at 4:00pm, Deputy Smith checked up on Williams in his isolation cell. At that time, Williams informed Deputy Smith that he had asthma and was having difficulty breathing. Williams also said he informed Smith that he was in need of his nebulizer breathing machine. Deputy Smith informed Williams that there was nothing he could do about it. Williams then asked Deputy Smith if he could speak to his supervisor. Deputy Smith replied that he was not there, so Williams could not speak to him. However, Deputy Smith left a note on the cell door indicating Williams needed some medical attention. Deputy Smith claims that he told a supervisor that Williams wanted to speak a to a supervisor, but he does not recall which supervisor he told.

At 7:45pm, Deputy Jailer Jeff Wells ("Deputy Wells") discovered that Williams was having problems breathing. Deputy Wells escorted Williams to the diversion area, delivered the

nebulizer to him and informed Lt. James Pyle ("Lt. Pyle," a senior deputy) of the situation. Lt. Pyle checked on Williams just before 8:00pm, and he observed Williams clutching his chest and having issues breathing as he attempted the nebulizer treatment. Williams had given himself two nebulizer treatments, however, neither of them stabilized his breathing. Lt. Pyle then ordered Deputy Wells to transport William to the emergency room at Jennie Stuart Medical Center in Hopkinsville.

Williams was diagnosed with asthmaticus, caused by hypoventiliating and brochospasms. Williams was placed in the critical care unit of the hospital, and was subsequently discharged from the hospital with medications on May 10, 2003. Williams has since testified that he had been hospitalized on three or four different occasions with similar conditions of status asthmaticus prior to his condition on May 7, 2003. Williams admitted that, similar to the instance in question, he had used his nebulizer prior to those hospitalizations, but it did not prevent him from seeking medical treatment.

After being released from custody on May 12, 2003, Williams, his mother and his aunt met with Major Boyd to voice their grievances about the way they felt Deputy Smith had inappropriately handled Williams' medical condition. At this meeting, Williams and his family claim that they were never made aware of the formal grievance process.

## DISCUSSION

In their motion for summary judgment, the Defendants make several arguments to dismiss the complaint by Williams. The Defendants assert: that Williams' complaint must be dismissed pursuant to the Prison Litigation Reform Act ("PLRA"); that even if the PLRA does not bar Williams' complaint, Williams has not established that his constitutional rights under the

Eighth and Fourteenth Amendments were violated; that the Defendants are entitled to qualified immunity; that Williams' claims against the Defendants in their official capacity must be dismissed because Williams cannot prove municipal liability under *Monell*; and that the state law claims must be dismissed as a matter of law because the individual defendants are entitled to qualified immunity and the official capacity claims are barred pursuant to sovereign immunity. The Court will address each of these matters individually.

**1. Application of the Prison Litigation Reform Act**

The Defendants contend that Williams did not suffer a "physical injury" as required under the PLRA to sustain his claims under the Eighth and Fourteenth Amendments. The PLRA, at 42 U.S.C. § 1997e(e), states in pertinent part: "[n]o Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." The Sixth Circuit Court of Appeals, in *Jarriett v. Wilson*, determined that the language of 42 U.S.C. § 1997e(e) applies to Eighth Amendment claims brought under 42 U.S.C. §1983, therefore prohibiting claims for *de minimis* physical injuries. *Jarriett v. Wilson*, 162 Fed.Appx. 394, 400 (6th Cir. 2005).

In the instant matter, the Plaintiff has not demonstrated that he had suffered physical damage greater than a *de minimis* injury. The Plaintiff has neither alleged long-lasting physical side effects nor any direct physical injuries sustained during the May 7, 2003 incident. Accordingly, the PLRA bars the Plaintiff's federal and constitutional claims brought under 42 U.S.C. §1983. As such, the Court will not address at this juncture whether or not the Plaintiff failed to exhaust his administrative remedies through the grievance process.

4

**2. Eighth and Fourteenth Amendment Violations**

Assuming that the PLRA does not bar the federal and constitutional claims of the Plaintiff, the Defendants argue that there is no evidence to support these actions under 42 U.S.C. §1983. Williams was a pretrial detainee at the time of the incident. Though the "Eighth Amendment does not apply to pretrial detainees...[u]nder the Fourteenth Amendment Due Process Clause, however, pretrial detainees have a right to adequate medical treatment that is analogous to the Eighth Amendment rights of prisoners." *Watkins v. City of Battle Creek*, 273 F.3d 682, 685-86 (6th Cir. 2001) (*citing City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

In determining whether the Defendants violated rights of the Plaintiff, in using an Eighth Amendment analysis, the United States Supreme Court has established a two-part test to determine if an Eighth Amendment violation has occurred. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). The Court held that: "[f]irst, the deprivation alleged must be, objectively, 'sufficiently serious,'[in that] a prison official's act or omission must result in the denial of 'the minimal civilized measure of life's necessities.'" *Farmer* at 834, *quoting Wilson v. Seiter,* 501 U.S. 294, 298 (1991); *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981); and the "second requirement follows from the principle that 'only the unnecessary and wanton infliction of pain implicates the Eighth Amendment,' [in that] a prison official must have a 'sufficiently culpable state of mind.'" *Farmer* at 834, *quoting Wilson*, 501 U.S. at 297. "To sustain such a claim, it is not necessary that the prison officials consciously sought to inflict pain by withholding treatment; it is sufficient to show deliberate indifference to an inmate's serious medical needs." *Molton v. City of Cleveland*, 839 F.2d 240, 243 (6th Cir. 1988).

In the instant matter, the Plaintiff has not put forth sufficient evidence to meet the two-part test.  In looking at the first part of the test, from an objective standpoint, it is not definitive that the omissions by the Defendants not to give the Plaintiff his nebulizer at an earlier point in the afternoon would have prevented the Plaintiff from going to the hospital.  This comes from the fact that the Plaintiff has admitted that he has had to go to the hospital at least three times before the May 7, 2003 incident for similar reasons after having used his nebulizer once his breathing condition had started.  Further, the affidavit of Dr. Gary Spencer, M.D., supports the argument by the Defendants that in light of Williams' medical history, he would have had to go to the hospital even if the nebulizer had been provided to him a few hours before 7:45pm because continuous nebulizer treatments at the hospital were unsuccessful while the successful treatments included Theophylline, antibiotics and steroids.  As such, based on the evidence provided, it cannot definitively be proved that but for the Defendants not providing Williams his nebulizer, he would not have ended up in the hospital.

Though not addressed by the Defendants, for purposes of the two-part test, the Plaintiff also has not proved the second part of the test to show an Eighth Amendment violation by the Defendants.  In determining whether or not the Defendants had "deliberate indifference" regarding his medical condition, the facts do not indicate that either Deputy Smith or Livy Leavell, Jr. ("Jailer Leavell"), the Christian County Jailer, had the required intent to show deliberate indifference by the Defendants to the medical condition of the Plaintiff.  Jailer Leavell never knew of Williams' medical problems until after the incident took place, indicating that he did not have the intent to not care about the medical condition of the Plaintiff.  42 U.S.C. § 1983 liability must be based on more than the theory of respondeat superior, or the right to control

employees. *Hays v. Jefferson County, Ky.*, 668 F.2d 869, 874 (6th Cir.1982).

In regards to Deputy Smith, though his actions may not have helped the condition of Williams, his actions did not demonstrate the necessary deliberate indifference to Williams' medical condition. First, Deputy Smith did check upon Williams after 4:00pm, despite the Plaintiff's claim that nobody monitored the Plaintiff for close to five hours before he received his nebulizer. Deputy Smith then left a note on the prison cell of Williams indicating that he needed medical attention. After that Deputy Smith claims he told a supervisor that Williams needed to speak to him. These actions suggest that Deputy Smith did not have the necessary intent to meet the deliberate indifference standard to violate the Eighth Amendment rights of Williams. By leaving the note on Williams' cell door and by notifying a supervisor of Williams' desire to speak to a supervisor, Deputy Smith did not act deliberately indifferent towards Williams' medical condition. Accordingly, even if the PLRA did not preclude the federal and constitutional claims by Williams, the evidence does not support the Eighth and Fourteenth Amendment claims made by the Plaintiff.

**3. The Defense of Good Faith (Qualified) Immunity**

The Defendants argue that Deputy Smith and Jailer Leavell are entitled to the defense of qualified immunity. The United States Supreme Court, in *Harlow v. Fitzgerald*, stated that "government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). Before the Court determines whether or not an officer is protected by qualified immunity, the Court must first determine if there was a constitutional violation. *Saucier*

*v. Katz*, 533 U.S. 194, 201 (2001).  As determined *supra*, the PLRA precludes the constitutional claims brought by the Plaintiff.  Further, the Court has also determined that the evidence does not support the Plaintiff's claims that his Eighth and Fourteenth Amendment rights were violated by the Defendants.  As such, the Court need not evaluate whether the officers in question are protected by qualified immunity.  However, though the Court need not conduct this analysis, it will do so assuming that the Plaintiff has established an Eighth Amendment violation.

In determining whether or not an officer should receive qualified immunity, the United States Supreme Court has held that the test to determine whether a government employee receives qualified immunity comes from whether the actions of the employee violates clearly established law that a reasonable officer should know. *Saucier*, 533 U.S. at 201.  In the instant matter, the evidence does not show that the conduct of Deputy Smith and Jailer Leavell violated a clearly established law that a reasonable officer should know.  As mentioned *supra*, Jailer Leavell was not at the prison at the time of the incident and did not know of Williams' condition, and thus he did not violate the rights of the Plaintiff.  In regards to Deputy Smith, even assuming that his actions did violate the Eighth Amendment rights of the Plaintiff, as determined *supra*, Deputy Smith did not act in such a manner to qualify his conduct as unreasonable.  Leaving a note on the door of Williams' cell that ne needed medical attention as well as notifying a supervisor were reasonable actions under the circumstances.  Accordingly, both officers are entitled to qualified immunity.[1]

---

[1] In regards to the state law claims asserted by the Plaintiff that he argues were violated by the Defendants and that should preclude qualified immunity for the federal law claims, such claims are related to the alleged constitutional violation in question.  The United States Supreme Court, in *Davis v. Scherer*, determined that if a state law claim is related to the constitutional claim for the purposes of qualified immunity analysis under 42 U.S.C. §1983, the Court need only to determine whether the *federal* law rights were clearly established, not the state law rights because including violations of state law would "impermissibly expand" officer liability whenever an alleged

**4. Claims Against the Defendants in their Official Capacities**

The United States Supreme Court, in a case arising from the Sixth Circuit, has held that a "suit against a state official in his or her official capacity is not a suit against the official, but rather a suit against the official's office." *Will v. Michigan Dept. Of State Police*, 491 U.S. 58, 67 (1989). As such, a suit against a government agent in their official capacity equates to a suit against the government agency in question. A municipality, such as Christian County, may be liable under §1983 through: (1) actions of legislative bodies; (2) agencies exercising delegated authority that amounts to an official policy; (3) the actions of individuals with final decision-making authority; (4) policies of inadequate training or supervision; or (5) custom. *Monell New York Dept. Of Social Services*, 436 U.S. 658, 661, 694 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469, 473, 480, 481-484 (1986); *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387-390 (1989). As applied to the instant matter, the Plaintiff asserts that municipal liability can be established through ways (3) - (5).

A municipality may be held liable if an official, responsible for establishing final government policy, makes a deliberate choice to follow a course of action from among various alternatives that leads to a final policy dealing with the legal question at hand. *Pembaur* at 483-484. The United States Supreme Court has determined that as a matter of law, a judge, and not a jury, decides whether a person has final decision-making authority. *Jett v. Dallas Independent School District*, 491 U.S. 701, 735, 737 (1989). Courts may look at state and local laws, as well as customs or usage to determine who has final-decision making authority for the purposes of

---

constitutional infringement was related to a state law matter. *Davis v. Scherer*, 468 U.S. 183, 195-96 (1984). The Plaintiff may, and in this matter did assert these state law claims separately from the constitutional claims, and they will be addressed later on in this opinion.

§1983. *Id.* at 737.

The United States Supreme Court has held that in order to show a policy of inadequate training, the plaintiffs must prove a deliberate indifference by the local government. *City of Canton, Ohio v. Harris*, 489 U.S. 378, 387-390. A municipal policy that causes constitutional violations can be the basis for a §1983 claim. *Id.* at 387. However, the Court stated that only when the failure to train is a deliberate or conscious choice by the municipality can a local government be liable under §1983. *Id.* at 389. The Court noted two circumstances that would lead to a deliberate and indifferent failure to adequately train including: failure to provide adequate training in light of foreseeable serious consequences that could result from a lack of instruction, such as how to use a firearm; and when a city fails to act in response to repeated complaints of unconstitutional acts by its officers. *Id.* In *Commissioners of Bryan County, Oklahoma v. Brown*, the Supreme Court stated that the culpability of a municipality must be more than mere probability that an officer could cause the constitutional injury, but rather it must depend on the high likelihood that the officer would inflict the particular injury suffered by the plaintiff. *Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 412 (1997). The Sixth Circuit recognized the *Brown* approach in *Jefferson County, Kentucky v. Lindsay*, emphasizing that a "plaintiff must demonstrate that a municipal decision reflects deliberate indifference to the risk that a violation of a particular constitutional or statutory right will follow the decision." *Jefferson County, Kentucky v. Lindsay*, 124 F.3d 197 (1997).

The United States Supreme Court has held that municipal governments can be sued for their customs that cause constitutional violations, even if such customs have not been approved by a legislative body. *Pembaur*, 475 U.S. at 481-482 n.10. The Sixth Circuit, in *Doe v.*

*Claiborne County, Tenn*., stated that a "custom" for purposes of *Monell* and §1983 is "so permanent and well settled as to constitute a custom or usage with the force of law...[i]n turn, the notion of 'law' must include [d]eeply embedded traditional ways of carrying out state policy...It must reflect a course of action deliberately chosen from among various alternatives. In short, a 'custom' is a 'legal institution' not memorialized by written law." *Doe v. Claiborne County, Tenn.*, 103 F.3d 495, 507-08 (6th Cir.1996) (internal citations omitted). In *Doe*, the Sixth Circuit determined that the municipality did not have a custom of inaction that amounted to liability under *Monell* in failing to respond quickly enough to or acting passive during an investigation of a rape victim by a municipality employee. The Court used a four step analysis from *City of Canton v. Harris* that examined: (1) the existence of a clear and persistent pattern of unconstitutional conduct by employees; (2) notice or constructive notice on the part of the municipality; (3) the municipality's tacit approval of the unconstitutional conduct, such that their deliberate indifference in their failure to act can be said to amount to an official policy of inaction; and (4) that the municipality's custom was the "moving force" or direct causal link in the constitutional deprivation. *City of Canton*, 109 U.S. at 1204-05.

In the instant matter, the Plaintiff offers eight (8) "policies/customs" by Jailer Leavell that allegedly caused Williams to be deprived of his medical needs. The Defendants correctly assert that "policies/customs" (e)-(h) took place *after* the incident, and therefore may not be considered for purposes of the *Monell* analysis because such a determination only looks at policies leading up to the incident. In regards to "policies/customs" (a)-(d), the Plaintiff has not demonstrated that Jailer Leavell was deliberately indifference in regards to not having a written policy on new inmate medical conditions; not informing prison personnel of a medical

11

information policy; lack of supervision under 501 KAR 3:060 E2; and failure to discipline Deputy Smith regarding other incidents of unprofessionally dealing with inmates. The Plaintiff does not show whether or not the alleged behavior by Jailer Leavell was in fact a policy/custom that led to other incidents similar to the case of Williams, but it instead demonstrates that this was a one-time incident. An isolated incident, as demonstrated by the Plaintiff, does not amount to tacit approval of a policy/custom without evidence of a pattern of such behavior. *Oklahoma City v. Tuttle*, 471 U.S. 808, 821 (1985).

In regards to the two (2) alleged "policies/customs" of Christian County as a municipality, (b) took place after the incident, and as mentioned *supra*, cannot be analyzed under *Monell*. Policy/custom (a) alleges that the Christian County Fiscal Court failed to carry out its duty to establish education and training for jail personnel. However, in both its interrogatory responses as well as its reply brief, the Defendants noted that Christian County requires all of its employees to attend and complete all training mandated by the Corrections Cabinet. Further, the Plaintiff has not met the first two (2) prongs of the *Canton* test to establish liability for a municipal policy/custom because the Plaintiff has not shown a repeated pattern of similar conduct other than the lone incident, and the Plaintiff has not proven that the Defendants had apparent or constructive notice of such an alleged pattern of behavior. Accordingly, the official capacity claims against the Defendants fail as a matter of law.

**5. State Law Claims**

The Defendants contend that they are entitled to summary judgment on the state law claims because the Defendants are entitled to qualified official immunity for the claims asserted against them in their individual capacity, and that the claims against Christian County and the

officers in their official capacity fail pursuant to the doctrine of sovereign immunity.

**A. Qualified Immunity**

Public officers are entitled to qualified official immunity when they are sued in their individual capacities for "good faith judgment calls made in a legally uncertain environment." *Yanero v. Davis*, 65 S.W.3d 510, 521-22 (2001). Qualified immunity applies to the negligent performance by a public officer or employee when a public officer/employee: 1) makes a discretionary act or function; 2) in good faith; and 3) within the scope of the employee's authority. *Yanero* at 522.

In looking at the conduct of Jailer Leavell, the Defendants correctly argue that he did not act or fail to act in this instance. Further, there is no evidence to suggest that Jailer Leavell acted in bad faith. As such, Jailer Leavell is entitled to qualified immunity for the state law claims.

In regards to the conduct of Deputy Smith, the Plaintiff asserts that his duty was not discretionary because he had an obligation under Kentucky law to check on and provide a means of medical assistance to Williams. However, Deputy Smith does have discretion in determining how to handle a medical situation in a prison, in as far as using his judgment, in good faith, to determine the extent of the condition. Here, as mentioned *supra*, Deputy Smith left a note indicating a medical necessity on the cell door of Williams and claims to have notified a supervisor that Williams wished to speak to a supervisor. Leaving the note on the door as well as seeking out a supervisor demonstrates that Deputy Smith used his discretion in doing those actions because he could have easily not done anything at all. Further, the actions by Deputy Smith were not done in bad faith because although he could have arguably done more, he did

leave the note on the cell door indicating Williams needed medical treatment and also notified a supervisor about Williams' condition. Lastly, these acts were made within the scope of his authority as he was working at the time of the incident. Accordingly, Deputy Smith is entitled to qualified immunity.

## B. Sovereign Immunity

Plaintiff has agreed to withdraw its state law claims against Christian County, and its claims against Deputy Smith and Jailer Leavell in their official capacities. The Court sees no reason to keep Christian County as a named Defendant in this matter. Accordingly, all state law claims against the Defendants in their official capacities are dismissed.

## CONCLUSION

For the foregoing reasons, the Defendants' Motion for Summary Judgment is **GRANTED**.

An appropriate order shall issue.